# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2019-CP-01110-COA

**TERRY LEE COLEMAN**                                                                                          **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**                                                                                          **APPELLEE**

DATE OF JUDGMENT:                    06/06/2019
TRIAL JUDGE:                         HON. ANTHONY ALAN MOZINGO
COURT FROM WHICH APPEALED:           MARION COUNTY CIRCUIT COURT
ATTORNEY FOR APPELLANT:              TERRY LEE COLEMAN (PRO SE)
ATTORNEY FOR APPELLEE:               OFFICE OF THE ATTORNEY GENERAL
                                     BY: BILLY L. GORE
NATURE OF THE CASE:                  CIVIL - POST-CONVICTION RELIEF
DISPOSITION:                         AFFIRMED - 05/12/2020
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

### BEFORE J. WILSON, P.J., WESTBROOKS AND McDONALD, JJ.

### McDONALD, J., FOR THE COURT:

¶1.     A Marion County grand jury indicted Terry Lee Coleman for murder in 2008. He pleaded guilty in 2009 and was sentenced to life imprisonment in the custody of Mississippi Department of Corrections. On May 28, 2019, Coleman filed a motion for post-conviction collateral relief (PCR), requesting to withdraw his guilty plea. Finding Coleman's motion procedurally time-barred and that Coleman failed to prove an exception to the bar, the circuit court entered an order denying Coleman's PCR motion. Coleman now appeals from the circuit court's denial of his PCR motion and claims he is entitled to relief due to the lack of a factual basis for his guilty plea, that he was not informed of his right against self-incrimination, and that his counsel's assistance was ineffective. Finding no error in the trial

court's ruling, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2. On August 11, 2009, in the Circuit Court of Marion County, Terry Lee Coleman pleaded guilty to murdering Edward Charles Martin Jr. The following facts were presented and agreed to by Coleman during the plea hearing.

¶3. On June 21, 2008, Coleman, along with others, was playing dice on his father's property, which bordered Coleman's own property. Martin Jr.'s son was one of the participants in the dice game. An argument between Coleman and Martin Jr.'s son arose, and gunshots were exchanged before Martin Jr.'s son left the property.

¶4. After hearing about what had happened, Martin Jr. drove to Coleman's house. As Martin Jr. pulled into Coleman's driveway, Coleman came walking from his father's property carrying an AK-47. Coleman stopped Martin Jr. at the end of his driveway. Witnesses who were in a vehicle behind Martin Jr.'s would testify that Martin Jr. took no threatening action, that he did not say anything, and that Martin Jr. did not get out of his truck. Nonetheless, Coleman said he believed that Martin Jr. had come to shoot him. Coleman told Martin Jr. to get off his property and proceeded to beat on the truck's hood. Upon seeing Martin Jr. reach down, Coleman shot Martin Jr. one time through the truck's windshield. During the plea hearing, when asked if Martin Jr. had a gun, Coleman responded, "I didn't see a gun, but he raised his right hand down and I was at home protecting my family." No gun was found in Martin Jr.'s truck, and Martin Jr.'s hand was found on the gear shift.

¶5. Coleman, who was represented by counsel, signed and filed a "Petition to Enter the

2

Plea of Guilty" on the charge of murder. At a group plea hearing, the circuit court accepted Coleman's guilty plea along with pleas from two others charged with different crimes. The court asked each defendant how he would plead, and the court informed each of them of their rights individually.

¶6. During the plea hearing, the State explained the proof against Coleman. This included testimony from Coleman's father who tried to restrain Coleman from going back home because Coleman was upset. Witnesses in the vehicle that had pulled up behind Martin Jr.'s truck would testify that Martin Jr. did not get out of the truck and exhibited no threatening behavior. The State also said it had proof that Coleman knew Martin Jr.'s truck had a gear shift. It explained that if there were a trial, testimony would be offered that the community is small, that Martin Jr. and Coleman grew up together, that Martin Jr. lived around the corner from Coleman, and that Coleman had been around the truck with Martin Jr. on prior occasions.

¶7. The Court then addressed Coleman's attorney and Coleman directly:

> THE COURT: All right. So, Faye, with what the State proffered and assuming the jury believed their witnesses, professionally do you believe that there would be enough proof to where the jury would be able to find murder unanimously in this case?
>
> MS. PETERSON: Yes, Your Honor.
>
> THE COURT: And, Terry, do you agree with that?
>
> TERRY COLEMAN: Yes, sir.

¶8. At the hearing, the circuit judge asked Coleman whether he was satisfied with his

3

attorney's representation: "And has she in your opinion done everything as your attorney she should have done to properly represent you?" Again, Coleman responded affirmatively. After confirming that Coleman was aware that a life sentence accompanied a murder conviction in Mississippi, the circuit court accepted Coleman's plea of guilty to murder.

¶9. Almost ten years after Coleman pleaded guilty at his sentencing hearing, in May 2019, Coleman filed a PCR motion in the Marion County Circuit Court, requesting to withdraw his guilty plea, claiming (1) there was no factual basis for his conviction because the evidence did not prove every element of the offense for which he was charged, including deliberate design, (2) that he was not advised as to his right against self-incrimination, and (3) his counsel's assistance was ineffective because she failed to file an appeal when he asked and because she did not inform him of the possibility of filing a PCR motion. The circuit court denied Coleman's PCR motion, stating it was procedurally barred because it was not filed within three years of the date that Coleman pleaded guilty, as required by Mississippi Code Annotated section 99-39-5(2) (Rev. 2015), and that Coleman failed to prove an exception to the procedural bar. Coleman now appeals.

## STANDARD OF REVIEW

¶10. "When reviewing a trial court's denial or dismissal of a PCR motion, we will only disturb the trial court's decision if the trial court abused its discretion and the decision is clearly erroneous; however, we review the trial court's legal conclusions under a de novo standard of review." *Green v. State*, 242 So. 3d 176, 178 (¶5) (Miss. Ct. App. 2017).

## DISCUSSION

¶11. Coleman asserts that the circuit court erred in its decision to deny Coleman's PCR motion. He argues that (1) no factual basis was established that he had a "deliberate design to effect death," making his guilty plea not knowingly made; (2) that at the sentencing hearing he was not informed of his right against self-incrimination, and (3) that he had ineffective assistance of counsel. We find the circuit court did not err in denying Coleman's PCR motion.

¶12. The Mississippi Uniform Post-Conviction Collateral Relief Act (UPCCRA), Miss. Code Ann. §§ 99-31-1 to -29 (Rev. 2015), applies to any person sentenced by a court of record of the State of Mississippi, including a person currently incarcerated, and provides "an exclusive and uniform procedure for the collateral review of convictions and sentences." *Id*. § 99-39-3(1). In the case of a guilty plea, such as Coleman's, a motion for relief must be made within three years after the entry of the judgment of conviction unless a statutory exception applies. *Id*. § 99-39-5(2). The exceptions include (1) an intervening decision of either the Supreme Court of the United States or the State of Mississippi "which would have adversely affected the outcome of his conviction or sentence," or (2) new evidence that was not reasonably discoverable at the time of trial, or (3) the sentence has expired or a parole, probation, or conditional release has been unlawfully revoked. *Id*. § 99-39-5(2)(a)-(b). The defendant bears the burden of showing he has met a statutory exception. *Wooten v. State*, 275 So. 3d 96, 99 (¶9) (Miss. Ct. App. 2019); *Blount v. State*, 126 So. 3d 927, 931 (¶14) (Miss. Ct. App. 2013).

¶13. Additionally, errors affecting certain fundamental constitutional rights are also

excepted from the procedural bars of a PCR motion. *Brown v. State*, 83 So. 3d 459, 461 (¶6) (Miss. Ct. App. 2012). Ineffective assistance of counsel can constitute a violation of the defendant's fundamental constitutional rights. *Chapman v. State*, 167 So. 3d 1170, 1173 (¶10) (Miss. 2015). In a PCR motion, the "movant has the burden of showing he is entitled to relief by preponderance of the evidence." *Kidd v. State*, 221 So. 3d 1041, 1043 (¶8) (Miss. Ct. App. 2016). But merely asserting a fundamental-right violation is not enough to meet that burden. *Scott v. State*, 187 So. 3d 679, 681 (¶5) (Miss. Ct. App. 2016). There must appear to be some basis for the truth of the claim. *White v. State*, 59 So. 3d 633, 636 (¶11) (Miss. Ct. App. 2011).

¶14. Coleman pleaded guilty on August 11, 2009. Any PCR motion must be filed within three years of the time of a conviction, unless a statutory exception applies. To meet the three-year deadline in this case, Coleman needed to file his motion by August 11, 2012, which he failed to do. Although Coleman claimed a valid exception to the time-bar, the circuit court ruled that Coleman failed to establish such an exception and that his motion was therefore time-barred. We agree.

## I. Whether there was a factual basis for Coleman's guilty plea.

¶15. Coleman asserts the factual basis provided at the plea hearing does not prove the elements of murder, making his guilty plea unknowing, unintelligent, and involuntary. He argues this denial of the fundamental right to knowingly, intelligently, and voluntarily plead guilty is not subject to the procedural time-bar, and therefore the circuit court's decision should be reversed. We disagree.

6

¶16. A claim of an involuntary guilty plea, albeit involving a constitutional right, is still subject to the procedural bar. *Hughes v. State*, 106 So. 3d 836, 839-40 (¶9) (Miss. Ct. App. 2012); *see also Porter v. State*, 281 So. 3d 935, 937 (¶14) (Miss. Ct. App. 2019). More similar to the current case, this Court in *Green v. State* held that a claim of an involuntary plea due to the trial court's failure to establish a factual basis, did "not implicate a fundamental constitutional right and [was still] subject to the time-bar." *Green v. State*, 235 So. 3d 1438, 1440 (¶9) (Miss. Ct. App. 2017).

¶17. Coleman argues he entered his guilty plea unknowingly, unintelligently, and involuntarily. Even if his claim were accurate, it would still be subject to the statutory three-year time-bar that, as explained, expired almost eight years ago.

¶18. Moreover, Coleman's assertion that his plea was involuntary due to the lack of a factual basis lacks merit. It is true that this Court has held that before accepting a guilty plea, the circuit court must determine that the plea is knowingly, intelligently, and voluntarily made and that there is a factual basis for the plea. *See Collins v. State*, 270 So. 3d 63, 66 (¶7) (Miss. Ct. App. 2018). And "in order for a guilty plea to be considered knowing and voluntary, the defendant must know the elements of the charge against him." *Grazzier v. State*, 744 So. 2d 776, 778 (¶3) (Miss. 1999). But this Court has also determined the following:

> A factual basis for a guilty plea may be established in a number of ways, including by a statement of the prosecutor, the testimony of live witnesses, and prior proceedings, as well as an actual admission by the defendant although it is not necessary that the factual basis be established with words spoken from the defendant's own mouth.

*Turner v. State*, 864 So. 2d 288, 292, (¶17) (Miss. Ct. App. 2003) (citation omitted). Additionally, an affirmative confession to the charge is sufficient for establishing a factual basis. *Boyd v. State*, 253 So. 3d 933, 936 (¶9) (Miss. Ct. App. 2018). In *Boyd*, the State did not provide a recitation of the evidence, but Boyd admitted he had intercourse with a child, and all the relevant facts. *Id.* We found this to be sufficient to establish that his guilty plea was knowing, intelligent, and voluntary. Further, a bare admission of guilt is enough to consider a guilty plea valid. *Grazzier*, 744 So. 2d at 779 (¶7).

¶19. In this case, at Coleman's plea hearing the circuit court found that his plea was made voluntarily and intelligently. The circuit judge addressed Coleman specifically to make sure of this:

> Q. Now, Terry, what about you, is there anybody doing anything by way of anything?
>
> A. . . . No, sir.
>
> Q. So you're going to do whatever you want to enter, freely and voluntarily?
>
> A. Yes, sir.
>
> Q. Of your own free will, by your own decision?
>
> A. Yes, sir.

¶20. Similar to *Boyd*, the plea hearing transcript here shows Coleman agreeing to the facts of the case and admitting to shooting and killing the victim. This confession was sufficient to establish the factual basis for Coleman's guilty plea. Additionally, as previously addressed, when the judge asked Coleman and his counsel during the hearing whether the

8

facts presented at that time by the State, in conjunction with the State's witness that would be presented at trial, would be enough proof that a jury "would" unanimously find him guilty of murder, Coleman and his counsel agreed that a jury would. We agree with the circuit court, and we find Coleman's claim alleging a lack of a factual basis making his plea involuntary to be without merit.

## II. Whether Coleman was informed of his right against self-incrimination.

¶21. Coleman also asserts that he was not expressly informed of his right against self-incrimination or that he was waiving that right by pleading guilty. We find that this claim is not an exception to the UPCCRA's time-bar and find that Coleman was informed of the consequences of his guilty plea at the time he entered it, including what rights he was waiving.

¶22. In determining whether the plea is knowingly, intelligently, and voluntarily given, a trial court must advise the defendant of his rights, the nature of the charge against him, as well as the consequences of the plea. *Yates v. State*, 226 So. 3d 614, 619 (¶16) (Miss. Ct. App. 2017). Caselaw "admonishes us that a defendant must be informed of his constitutional right to trial by jury, to the right of confrontation, and to protection against self-incrimination prior to court adjudication that a guilty plea was intelligent and voluntary." *Horton v. State*, 584 So. 2d 764, 767 (Miss. 1991) (citing *Boykin v. Alabama*, 395 U.S. 238 (1969)). Errors affecting "fundamental constitutional rights" are excepted from the procedural bars of the UPCCRA. *Rowland v. State*, 42 So. 3d 503, 507 (¶12) (Miss. 2010). Again, as previously stated, merely asserting a constitutional right violation does not trigger the procedural bar

9

exception; there must at least appear to be some basis for the truth of the claim. *Evans v. State*, 115 So.3d 879, 881 (¶3) (Miss. Ct. App. 2013). In *Boyd v. State*, 155 So. 3d 914, 920 (¶13) (Miss. Ct. App. 2014), we acknowledged that there have been no cases in which the Mississippi appellate courts "have held that a trial court's failure to advise a defendant, on the record, of his right against self-incrimination is a constitutional violation sufficient to surmount the PCR procedural bars."

¶23.    Even if this claim were not subject to the time-bar, it is totally meritless because the transcript of the sentence hearing shows the circuit judge explained the nature and consequences of entering a guilty plea to each defendant, including Coleman:

> Again, you understand if you plead not guilty the law presumes you to be not guilty. The burden is on the State of Mississippi to prove your guilt beyond a reasonable doubt. You're entitled to have your attorney present with you at all stages of the preceding. You're entitled to a full and complete trial by jury. The only way you'd be convicted is if all 12 jurors find you guilty. . . . ***Now, each of you as a defendant have the absolute right under the Mississippi and United States Constitution not to testify. If you choose not to testify, nothing could be said or used against you.*** Under the Mississippi Constitution each one of you have the absolute right to testify. So whether you do or don't testify, that's the decision each of you make for yourself.

(Emphasis added).

¶24.    The record indicates all the defendants, including Coleman, responded affirmatively that they understood these rights. The judge also specifically addressed Coleman and asked him if he understood that he had the right not to testify, but that if he did testify, then his own attorney could question him and he could tell the jury what happened. Coleman said he understood this. Because the judge thoroughly questioned Coleman prior to accepting his plea and explained the rights, including the right against self-incrimination, that he was

waiving by pleading guilty, we find that the trial court did not error in denying Coleman's PCR motion on that claim.

### III. Whether there is a basis for Coleman's claim of ineffective assistance of counsel.

¶25. Lastly, Coleman alleges he received ineffective assistance of counsel. Coleman claims that when he asked his attorney about "some type of appeal," his counsel "did not advise or discuss filing a notice of appeal. . . ." He states that his counsel should have advised him that a PCR motion was his only recourse. We find that Coleman's claim of ineffective assistance of counsel is without merit and that it lacks factual support except for his own affidavit.

¶26. As stated previously, ineffective assistance of counsel can constitute a violation of a defendant's constitutional rights. *Chapman v. State*, 167 So. 3d 1170, 1173 (¶10) (Miss. 2015). "Under the *Strickland* [1] test, in order to succeed on an ineffective-assistance-of-counsel claim, the defendant must show that his trial counsel's performance was deficient, and he was prejudiced by that deficiency." *Magee v. State*, 270 So. 3d 225, 229 (¶16) (Miss. Ct. App. 2018). In *Easterling v. State*, this Court held that the convicted defendant must show "that counsel's representation fell below an objective standard of reasonableness." *Easterling v. State*, 281 So. 3d 243, 250 (¶20) (Miss. Ct. App. 2019). "The defendant must show unprofessional errors of substantial gravity, and allege such facts with specificity and detail." *Magee*, 270 So. 3d at 229 (¶16) (internal quotation marks omitted). "A claim of ineffective assistance of counsel must be supported by affidavits other than the defendant's."

---

[1] *Strickland v. Washington*, 466 U.S. 668 (1984)

*Easterling*, 281 So. 3d at 250 (¶21). This obligation is not absolute and may be excused by a showing of good cause for failing to obtain those affidavits. *Walden v. State*, 201 So. 3d 1042, 1045 (¶15) (Miss. 2016).

¶27. First, by pleading guilty, the right to a direct appeal is waived. Miss. Code Ann. § 99-35-101 (Rev. 2015). Because Coleman pleaded guilty, there was no appeal that his counsel could have filed, and therefore failing to file an appeal did not constitute representation by ineffective counsel.

¶28. Second, when a defendant challenges his guilty plea in a PCR motion on the grounds of ineffective assistance of counsel, as Coleman did here, the defendant must show that counsel's errors proximately resulted in his guilty plea and that he would not have entered the plea at all but for counsel's errors. *Covington v. State*, 909 So. 2d 160, 162 (¶4) (Miss. Ct. App. 2005). In this case, by signing his guilty-plea petition, Coleman indicated he was advised of the nature of his crime and informed of the rights he would waive by pleading guilty. He presents no details or specifics that his counsel made any error resulting in his pleading guilty. Coleman stated during his plea hearing he was satisfied with his counsel, and he thought she had done everything she should have done to properly represent him.

¶29. Finally, Coleman claims that his counsel's assistance was ineffective because she did not inform him of the possibility of filing a PCR motion. But he fails to provide details to support this allegation. Coleman does not say when or how he made this request of his attorney. What Coleman claims is nothing more than an assertion, similar to that presented by the defendant in *Bass v. State*, 888 So. 2d 1187, 1191 (¶21) (Miss. Ct. App. 2004). There,

12

we denied Bass's PCR motion for claiming that his counsel failed to file an appeal without providing specific facts to support the allegation. *Id.* Despite recognizing that a lawyer's deficient performance may constitute a violation of the defendant's constitutional rights, the Mississippi Supreme Court said, "[T]his Court has never held that merely raising a claim of ineffective assistance of counsel is sufficient to surmount the procedural bar." *Bevill v State*, 669 So. 2d 14, 17 (Miss. 1996) (emphasis omitted).

¶30. Here, Coleman failed to file any other affidavits or evidence to support his allegation of his counsel's alleged failures or show good cause as to why he cannot provide more than his own affidavit. Accordingly, we find no abuse of discretion by the circuit court in denying Coleman's PCR motion on his claim of ineffective assistance of counsel.

## CONCLUSION

¶31. We find no error in the trial court's denial of Coleman's PCR motion. Coleman's motion was time-barred, and he failed to prove any exception to the procedural bar. The trial court's denial of Coleman's PCR motion is hereby affirmed.

¶32. **AFFIRMED.**

**CARLTON, P.J., GREENLEE, WESTBROOKS, TINDELL, LAWRENCE AND McCARTY, JJ., CONCUR. BARNES, C.J., J. WILSON, P.J., AND C. WILSON, J., CONCUR IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION.**